UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 14-cv-11759 |
| FEDERAL BUREAU OF INVESTIGATION and CARMEN ORTIZ, UNITED STATES ATTORNEY FOR THE DISTRICT OF MASSACHUSETTS, | * * * * * | |
| Defendants. | * * | |

**MEMORANDUM AND ORDER**

August 17, 2016

BURROUGHS, D.J.

       This action concerns two identical Freedom of Information Act ("FOIA") requests that

Plaintiff American Civil Liberties Union Foundation of Massachusetts ("ACLUM") sent to the

Federal Bureau of Investigation ("FBI") and Carmen Ortiz, U.S. Attorney for the District of

Massachusetts ("USAO"). These FOIA requests asked for materials regarding: (A) the structure

of the Joint Terrorism Task Force ("JTTF") that operates in Massachusetts ("Request A"); (B)

the number and types of investigations conducted by the FBI Boston Field Office since 2011

("Request B"); and (C) the Massachusetts JTTF's involvement with Ibragim Todashev, who was

shot and killed in Florida while reportedly being questioned about a September 2011 triple

homicide in Waltham, Mass. and the April 2013 Boston Marathon bombings ("Request C").

There are currently three pending summary judgment motions concerning the FBI and USAO's responses to Requests A and B.[1] The FBI has moved for summary judgment as to its search for and release of documents responsive to these two requests. [ECF No. 51]. The ACLUM has cross-moved for summary judgment against the FBI, objecting to the FBI's nondisclosure of certain materials. [ECF No. 60]. The ACLUM has also moved for summary judgment against the USAO. [ECF No. 56]. The USAO has not searched for or released any documents responsive to Requests A and B, and the ACLUM's motion asks that the Court order it to do so.

For the reasons stated below, the Court finds that the FBI performed a reasonable, adequate search for records responsive to Requests A and B, and that with the exception of its nondisclosure of certain materials under FOIA Exemption 7(E), as more fully set forth herein, it properly withheld information under FOIA's exemptions. The Court finds, however, that the ACLUM is entitled to summary judgment with respect to the USAO and orders the USAO to conduct a reasonable search for records responsive to Requests A and B.

## I.    Factual and Procedural Background

On December 9, 2013, the ACLUM sent identical FOIA requests to the USAO and FBI requesting records regarding the Massachusetts JTTF. [ECF Nos. 1-1, 1-2]. The letter asked for "information about how the Massachusetts JTTF functions, how its authority is divided and shared, what safeguards are in place to ensure the civil liberties of those whom it targets, and the number and type of investigations conducted out of Massachusetts." Id. at 2. It also asked for

---

[1] At the time these motions were filed, the defendants were still processing Request C, which is therefore not at issue at this time.

"specific information about the Massachusetts JTTF's involvement in the investigation into and death of a suspect, Ibragim Todashev." Id. The letter was divided into three sections.

Request A, regarding the structure of the Massachusetts JTTF, had seven subparts. It asked for, among other things, records indicating the purpose of the Massachusetts JTTF; its organization; its relationship with the FBI, USAO, and other agencies; and its size and budget. Id. at 2-3. Request B, regarding the FBI Boston Field Office's Investigations, had two subparts. It asked for information regarding the number of assessments, preliminary investigations, and full investigations conducted by the FBI Boston Field Office since 2011. Id. at 3. Request C, regarding the investigation of Ibragim Todashev, also had two subparts. It requested all documents relating to Todashev, including documents describing any involvement of the Massachusetts JTTF in his death. Id. at 4.

The letter requested expedited processing and a fee waiver. The ACLUM stated that there was "an urgent need to inform the public about the workings of the Massachusetts JTTF, an issue that has been of widespread and exceptional media and public interest . . . ." Id.

The ACLUM filed the Complaint in this action on April 10, 2014, naming both the FBI and Carmen Ortiz as defendants. [ECF No. 1]. The ACLUM alleged that it had not yet received any documents from either the FBI or USAO in response to its FOIA requests. Id. ¶ 11. As of the time of the filing, the USAO had not responded to the FOIA request at all. The FBI had acknowledged receipt of the request and begun to process it, but had not yet produced any documents, and was refusing to release any documents responsive to Request C. Id. ¶¶ 40-45. The Complaint brought eight counts: failure to make reasonable effort to search for records sought by the requests (Count I, against both defendants); failure to promptly make records available (Count II, against both defendants); failure to process requests as soon as practicable

(Count III, against both defendants); failure to grant a fee waiver (Count IV, against both defendants); failure to grant limitation of fees (Count V, against both defendants); failure to estimate volume of records denied (Count VI, against the FBI only); failure to provide responsive documents (Count VII, against both defendants); and an appeal of the FBI's denial of Request C (Count VIII, against the FBI only).

On July 21, 2014, the parties agreed on a schedule for the search and production of documents responsive to the ACLUM's FOIA requests. [ECF No. 25]. The FBI stated that it expected to complete its search for documents responsive to all three portions of the request by July 31, 2014, and agreed to produce its first interim response by September 2, 2014. Id. The USAO also agreed to provide its first interim response, consisting of emails responsive to all three portions of Plaintiff's FOIA request, by September 2, 2014. Id.

The FBI processed a total of 1,849 pages responsive to Requests A and B. [ECF No. 53 ¶ 4]. Of these pages, 903 were released in full, 162 were released in part, and 784 were withheld in full. Id. The USAO did not search for or produce any documents responsive to Requests A and B, claiming that a search would be unduly burdensome and unnecessary, since any records in its possession, responsive to Requests A and B, are duplicative of records that the FBI has already processed and released.

On July 24, 2015, the FBI moved for summary judgment with respect to Requests A and B. [ECF No. 51]. It filed a declaration from David Hardy, the Section Chief of the Records/Information Dissemination Section (the "Hardy Declaration"), that described the FBI's processing of the two requests [ECF No. 53], and asked that the Court find as a matter of law that it has fully discharged its obligations under FOIA. On August 24, 2015, the ACLUM simultaneously opposed the FBI's motion and cross-moved for summary judgment against the

FBI [ECF No. 60], based on its contention that the FBI improperly used FOIA Exemption 7(E) to withhold various materials. On that same day, the ACLUM also moved for summary judgment against the USAO, requesting that the Court order the USAO to perform a reasonable search for documents responsive to Requests A and B. [ECF No. 56]. The Court held oral argument on these three motions on January 28, 2016. [ECF No. 76].

## II.    Legal Standard

Congress enacted FOIA to "pierce the veil of administrate secrecy and to open agency action in the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (internal quotations omitted). "The statute embodies a broad policy in favor of disclosure, reflecting the notion that 'promot[ing] an informed citizenry . . . is vital to democracy.'" Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 250 (1st Cir. 2013) (quoting Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 437 (1st Cir. 2006)). FOIA acts as an "important tool in holding the government accountable because it provides citizens a means to 'know what the government is up to.'" Stalcup v. C.I.A., 768 F.3d 65, 69 (1st Cir. 2014) (quoting Carpenter, 470 F.3d at 437).

Under FOIA, agencies must disclose all requested records unless one of nine statutory exemptions applies. 5 U.S.C. § 552(b). These nine exemptions are "explicitly made exclusive and must be narrowly construed." Milner v. U.S. Dep't of Navy, 562 U.S. 562, 565 (2011) (internal quotations and citations omitted). The exemptions are intended to "effectuate the goals of the FOIA while safeguarding the efficient administration of the government," Carpenter, 470 F.3d at 438, and should "not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Rose, 425 U.S. at 361. The government bears the burden of proving that withheld materials fall within one of the enumerated exemptions. 5 U.S.C. § 552(a)(4)(B).

In response to a FOIA request, an agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oleskey ex rel Boumediene v. U.S. Dep't of Defense, 658 F.Supp.2d 288, 294 (D. Mass. 2009) (quotation marks omitted). The government bears the burden of showing that it conducted an adequate search. Moffat, 716 F.3d at 254. The adequacy of a search is "determined not by whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." Id. (internal quotation marks omitted). To show that it conducted an adequate search, an agency "may rely upon affidavits provided they are relatively detailed and nonconclusory, and are submitted by responsible agency officials in good faith." Maynard v. C.I.A., 986 F.2d 547, 599 (1st Cir. 1993). "[I]f an agency demonstrates that it has conducted a reasonably thorough search, the FOIA requester can rebut the agency's affidavit only be showing that the agency's search was not made in good faith." Id. at 560.

FOIA cases are typically decided on motions for summary judgment. Georgacarakos v. FBI, 908 F. Supp. 2d 176, 180 (D.D.C. 2012). A movant is entitled to summary judgment where it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" Fischer v. U.S. Dep't of Justice, 596 F.Supp.2d 34, 42 (D.D.C. 2009) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F.Supp.2d 3, 11 (D.D.C. 1998)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotations omitted).

## III.   Discussion

### a.  FBI

As discussed earlier, the FBI first moved for summary judgment against the ACLUM and the ACLUM then cross-moved for summary judgment against the FBI. The FBI contends that it is entitled to summary judgment because it: (1) conducted an adequate, reasonable search and (2) properly withheld and redacted documents pursuant to various FOIA exemptions (Exemptions 1, 6, 7(C), and 7(E)). The FBI asks the Court to find that as a matter of law its response to Requests A and B fulfills all of its obligations under FOIA.

The ACLUM's opposition and cross-motion challenges only the FBI's use of FOIA Exemption 7(E). The ACLUM requests an order compelling the FBI to release certain information that it alleges should not have been withheld under Exemption 7(E) or, alternatively, an order requiring an *in camera* inspection of certain withheld documents and that the FBI supplement its Vaughn index.

The FBI has demonstrated, with the exception of its use of Exemption 7(E), that it has fulfilled its obligations as to Requests A and B. As set forth in the Hardy Declaration, the FBI conducted an adequate, reasonable search for responsive records. The ACLUM has not disputed the adequacy of this search nor alleged bad faith. Further, the FBI's withholding of documents under Exemptions 1, 6, and 7(C) is unchallenged and therefore affirmed. In accordance with the statutory requirements of FOIA, the Hardy Declaration contains an adequate description of, and justification for, the information withheld pursuant to these exemptions.

With regards to the ACLUM's limited challenge to the FBI's response, the Court finds that the FBI has improperly withheld certain materials under Exemption 7(E). Under this exemption, an agency may withhold law enforcement records that disclose either: (1) techniques and procedures for law enforcement investigations or prosecutions or (2) guidelines for law enforcement investigations or prosecutions that could reasonably be expected to risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E); see also Bishop v. U.S. Dep't of Homeland Sec., 45 F.Supp.3d 380, 387 (S.D.N.Y. 2014) (noting that when an agency invokes Exemption 7(E), "a court must determine if either of Exemption 7(E)'s 'two alternative clauses' applies"). In this context, the phrase "techniques and procedures" has been defined as "how law enforcement officials go about investigating a crime" while "guidelines" has been defined as "an indication or outline of future policy or conduct." Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 626 F.3d 678, 682 (2d Cir. 2010).

The ACLUM first challenges the FBI's use of Exemption 7(E) to withhold information related to the Massachusetts JTTF's staffing and budget.[2] The withheld information includes the number of agents assigned to the Massachusetts JTTF, the supplies allocated to the Massachusetts JTTF, and the Massachusetts JTTF's overtime policy, all for various times between 2003 and 2014.[3] The FBI claims that these materials are techniques and procedures for

---

[2] The ACLUM also objected to the FBI's nondisclosure of information concerning the overall composition of the JTTF (i.e. the total number of JTTFs and the number of states covered by the Massachusetts JTTF), but the FBI has since agreed to release such information. [ECF No. 68 at 2].

[3] The ACLUM challenges the redaction of staffing and budget information in the following documents: JTTF 5, JTTF 11, JTTF 712, JTTF 717, JTTF 723, JTTF 725-27, JTTF 729-33, JTTF 734. [ECF No. 61 at n.12 & n. 14]. Further, its contests the total withholding of one document: JTTF 720. Id. at n. 25. The Court has not been provided with JTTF 720 for review, but assumes it contains the same type of information that was redacted in the other documents. To the extent this is not the case, and the document contains information materially different

law enforcement investigations or prosecutions that are exempt from disclosure under Exemption 7(E). [See, e.g., ECF No. 53 ¶¶ 47-49].[4] The FBI states in its Vaughn index that releasing this information would "reveal the resources provided to operate the Massachusetts JTTF." [ECF No. 53 at 69-87]. "Armed with this information," according to the FBI, "criminals would have an idea as to where the FBI is focusing its limited resources." [ECF No. 52 at 19]. "Criminals could then plan and structure their activities to [] avoid the FBI's investigative strengths, exploit its weaknesses, and circumvent the law." Id.

The Court finds that the FBI has not satisfied its burden of demonstrating that Exemption 7(E) applies to these staffing and budget materials. See State of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 65 (1st Cir. 2002) ("When an aggrieved party files an action under the Act because documents are withheld, the burden under the statute is on the agency to demonstrate the applicability of a claimed exemption."). The FBI has not made the threshold showing that the withheld information, none more recent than 2014, would disclose "techniques and procedures" for law enforcement investigations or prosecutions. The historic, generic staffing and budget information withheld by the FBI, such as the number of parking spots allocated to the Massachusetts JTTF or the maximum overtime pay, does not disclose how the Massachusetts JTTF actually goes about investigating crimes. See Allard K. Lowenstein Int'l Human Rights Project, 626 F.3d at 682 (defining "techniques and procedures" as referring to "how law enforcement officials go about investigating a crime"). As Judge Scheindlin of the Southern District of New York recently observed, "[t]he terms 'techniques' and 'procedures' refer to

---

from that in the redacted documents, the FBI should notify the Court as to its specific contents and concerns regarding disclosure.

[4] The FBI has never asserted that the withheld information constitutes "guidelines" exempted under Exemption 7(E).

specific methods of law enforcement, not policy and budgetary choices about the assignment of personnel." Families for Freedom v. U.S. Customs & Border Prot., 837 F.Supp.2d 287, 299 (S.D.N.Y. 2011) (finding that "[t]echniques and procedures include how, where, and when agents board Buffalo-region trains and buses, talk to passengers, and make arrests," but that "[t]he words do not refer to the staffing decisions defendants made years ago"); see also Irons v. F.B.I., 880 F.2d 1446, 1451 (1st Cir. 1989) (noting that Exemption 7(E) protects "disclosure indicat[ing] how the agency investigated the case").

The cases cited by the FBI support this conclusion. In all of them, the information withheld under Exemption 7(E) related to individual investigations or specific investigatory methods. The FBI cites cases, for example, in which Exemption 7(E) was invoked to withhold expenditures for a single investigation,[5] or databases and codes with information about individual cases.[6] Further, in the cited cases, when more general documents were withheld, they were manuals or handbooks that disclosed specific law enforcement procedures.[7] None of the

---

[5] Frankenberry v. FBI, No. 3:08-1565, 2013 WL 125779, at *4 (M.D. Pa. Jan. 9, 2013) (withheld information "related to expenditures made in the course of investigating Plaintiff"); Concepcion v. FBI, 606 F.Supp.2d 14, 434 (D.D.C. 2009) (withheld "the amount of money used to purchase evidence" during investigation of plaintiff).

[6] Vazquez v. FBI, 887 F.Supp.2d 114, 117-18 (D.D.C. 2012) (withheld law enforcement database entries concerning plaintiff); Miller v. U.S. Dep't of Justice, 872 F.Supp.2d 12, 17, 28-29 (D.D.C. 2012) (withheld NADDIS and TECS numbers related to plaintiff's requests for information about himself); Abdelfattah v. U.S. Immigration & Customs Enf't, 851 F.Supp.2d 141, 143, 145 (D.D.C. 2012) (withheld "program codes, investigative notes and internal instructions" related to request for "all records about Plaintiff that were held in any record system under the jurisdiction of ICE"); Tunchez v. U.S. Dep't of Justice, 715 F. Supp. 2d 49, 55-56 (D.D.C. 2010) (withheld information that would "identify which among the 27 techniques and procedures listed on the documents were used in investigating [Plaintiff] and the FBI's evaluation of those techniques and procedures").

[7] ACLU of Mich. v. FBI, No. 11-13154, 2012 WL 4513626, at *10 (E.D. Mich. Sept. 30, 2012) (withheld portions of the Domestic Investigation and Operations Guide that detailed the capabilities, limitations and usage of surveillance tools; the "treatment and storage" of incomplete FBI work; and the specific methods of collecting and analyzing investigative information); Elec. Frontier Found. v. U.S. Dep't of Defense, No. 09-05640, 2012 WL 4364532,

cases involved the type of historic, nonspecific staffing and budget information withheld by the FBI here.

The ACLUM also objects to the FBI's use of Exemption 7(E) to redact certain case statistics. It specifically objects to redactions in two documents. In the first, Boston FO 1, the FBI redacted the total number of active/open investigations in the FBI Boston Field Office as of 2014. In the second, Boston FO 3-55, the FBI redacted the number of assessments, full investigations, and preliminary investigations being conducted in the FBI's Boston Field Office, separated by case type, as of January 2014. The FBI may not use Exemption 7(E) to withhold the total number of active/open investigations included in Boston FO 1, but it may use Exemption 7(E) to withhold the more granular data in Boston FO 3–55. The total number of open investigations is, again, too generic to constitute a technique or procedure of law enforcement; it does not disclose how the FBI's Boston Field Office investigates crimes or disclose any investigative trends. The more specific data in Boston FO 3-55, however, does disclose how the FBI's Boston Field Office goes about investigating crimes. The information redacted in Boston FO 3-55 shows what activities trigger a full investigation as opposed to a preliminary investigation or assessment, as well as what types of cases the FBI is focusing on.

The ACLUM, resisting the withholding of Boston FO 3-55, attempts to analogize the withheld data to arrest statistics, which have previously been disclosed under FOIA. Arrest

at *4-5 (N.D. Cal. Sept. 24, 2012) (withheld "detailed technical analyses of [] agencies' use of the internet" and "detailed instructions and guidance the agency internally uses" for its use of social networking sites in gang investigations); Council on Am.-Islamic Relations v. FBI, 749 F.Supp.2d 1104, 1115-16, 1123 (S.D. Cal. 2010) (withheld "investigative techniques and procedures, an internal questionnaire used by FBI Special Agents to guide their investigations, information pertaining to the location and identity of investigative units, information pertaining to the internal dissemination of information, and information pertaining to the dates and types of investigations and the basis for the initiation of investigations").

statistics, however, are a compilation of historic, generally public, information. As a result, they do not disclose any unknown information about how crimes are investigated. The redacted statistics in Boston FO 3-55, on the other hand, concern nonpublic, potentially ongoing investigations, some of which will never result in public arrests. Accordingly, unlike arrest statistics, the redacted numbers in Boston FO 3-55 would disclose confidential information about how the FBI's Boston Field Office goes about investigating crimes, and they were therefore properly withheld under Exemption 7(E).

### b. USAO

Unlike the FBI, the USAO has not conducted any search or produced any documents responsive to Requests A and B. The ACLUM's motion for summary judgment asks that the Court order the USAO to conduct a reasonable search and to produce responsive, non-exempted records. In its opposition brief, and in its correspondence with the ACLUM, the USAO has made the following arguments in support of its inaction: (1) that the Department of Justice ("DOJ") is the proper party to this action and the DOJ can decide which component—in this case the FBI—searches for and produces documents; (2) that its production would be duplicative of documents in the FBI's possession; and (3) that a search would be unduly burdensome.

The USAO's refusal to conduct a search is inconsistent with the DOJ's FOIA regulations. "The [DOJ] has a decentralized system for processing requests, with each component handling requests for its records." 28 C.F.R. § 16.1(c). Under 28 C.F.R. § 16.4, each DOJ "component" is directed to process FOIA requests independently:

> Except in the instances described in paragraphs (c) and (d) of this section, the component that first receives a request for a record and maintains that record is the component responsible for responding to the request. In determining which records are responsive to a request, a component ordinarily will include only records in its possession as of the date that it

begins its search. If any other date is used, the component shall inform the requester of that date. . . .

28 C.F.R. § 16.4(a). Both the FBI and USAO are "components" under these regulations, 28 C.F.R. § 16, app. I,[8] and therefore each has independent obligations to respond to FOIA requests. See Ewell v. U.S. Dep't of Justice, 153 F.Supp.3d 294, 302 (D.D.C. 2016) ("[O]nly the component to which the FOIA request is directed has an obligation to conduct a search.").[9]

The USAO makes much of the fact that the DOJ substituted itself as a defendant in this action. On June 5, 2014, the DOJ unilaterally submitted a "notice of substitution," in which it purportedly substituted itself for the two named defendants. [ECF No. 17]. It claims that the ACLUM has ignored the substitution, and that the DOJ, now the sole defendant, can determine which of its components is best suited to search for responsive records. This argument ignores the DOJ's decentralized FOIA regime. Both the FBI and USAO received separate FOIA requests, and therefore each must independently fulfill its FOIA obligations, regardless of the identity of the defendant. The FBI and USAO's course of conduct during this litigation confirms this understanding of the DOJ's FOIA regime: at the outset, the USAO and FBI independently acknowledged receipt of the requests [ECF Nos. 53-1 at 57, 59-2 at 2]; after the complaint was filed, the USAO and FBI agreed to distinct schedules for responding to the requests [ECF No.

---

[8] Technically, the USAO is not a component under these regulations. The Executive Office for United States Attorneys, U.S. Department of Justice ("EOUSA") is the relevant component. The ACLUM's request to the USAO was forwarded to and processed by the EOUSA. [ECF No. 59-2 at 2].

[9] This is consistent with the FOIA instructions on the DOJ's website, which state that the "DOJ is organized into a number of bureaus, divisions, offices, and boards, which are referred to as 'components.' Within DOJ, each component processes its own records in response to FOIA requests." https://www.justice.gov/oip/make-foia-request-doj (last visited August 16, 2016).

29]; and when the DOJ moved for summary judgment, it was only as to the documents reviewed and released *by the FBI*. [ECF No. 51].[10]

The USAO, relying on a declaration from James B. Farmer, an Assistant U.S. Attorney in Boston, claims that it did not need to conduct a search because it would have been unduly burdensome and duplicative of the search already conducted by the FBI. [ECF No. 67-2]. In the declaration, Farmer states he has served as the Chief of the Antiterrorism and National Security Unit of the U.S. Attorney's Office for the District of Boston since 2005, and that he is generally familiar with the Massachusetts JTTF and its relationship with the USAO. Id. at 1. According to Farmer, the Massachusetts JTTF is overseen and run by the FBI, but Boston AUSAs work on an ongoing basis with the Massachusetts JTTF's Task Force Officers. Id. 1-2. Based on his general familiarity with the work of the USAO, he states that, in his belief, "any responsive documents that would be found in our office would have been originated by or received from the FBI and, therefore, would be duplicative of documents the FBI has and has searched for in response to the identical FOIA request that the ACLU of Massachusetts submitted to the FBI on December 9, 2013." Id. at 2; see also ECF No. 66 at 9 ("Even though the U.S. Attorney's Office may have documents responsive to these requests, the DOJ believes these documents are duplicates of the FBI's documents."). Further, he states "with certainty that a conscientious search to locate any documents in these two categories would necessarily have to involve an extensive manual search of paper files located in a total of four buildings . . ." and that it's "unlikely that any such documents in the Office would be in electronic form." Id.

---

[10] In any event, the Court notes that the DOJ is not the defendant in this action. The DOJ was not a named defendant, and it does not have the authority to use a "notice of substitution" to unilaterally designate itself the defendant and effectively dismiss the named defendants.

The statements in the Farmer declaration do not justify the USAO's refusal to conduct a search. Farmer acknowledges in his declaration that the Boston USAO has responsive documents. Farmer does not possess the personal knowledge needed to establish that the USAO's records are duplicative of the records produced by the FBI. See Elec. Privacy Info. Ctr. v. Dep't of Justice Criminal Div., 82 F.Supp.3d 307, 315 (D.D.C. 2015) (finding FOIA search inadequate where agency only searched one employee's files "based solely on the lead attorney's representations [that any additional searches would be duplicative]," because it was "not obvious why the lead attorney would know the contents of all the responsive records so as to affirm that they are duplicative of his files or, conversely, that his files are duplicative of all other files"). Farmer does not represent that he has access to the FBI's files, or that he has reviewed any of the FBI files produced to the ACLUM. He also does not attest that the FBI and the USAO have the same document-retention policies, or that those policies were followed in the same manner and to the same degree. While it might be true that the responsive records are most likely to be located in the FBI's files, the Farmer Declaration does not show that they are so unlikely to be found in the USAO's files that no search is required. See Mobley v. C.I.A., 806 F.3d 568, 582 (D.C. Cir. 2015) (noting that "a search is generally adequate where the agency has sufficiently explained its search process and why the specified record systems [not searched] are not reasonably likely to contain responsive records"); see also Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) ("To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover *all* relevant documents.") (quotation marks omitted) (emphasis added).

The USAO also claims that it does not need to search for documents because any responsive records in its possession originated with the FBI. [See, e.g., ECF No. 66 at 9-10 ("If the U.S. Attorney's Office has any documents regarding the assignment of FBI personnel to the JTTF, it would be in the form of a document that originated at the FBI and was sent to the U.S. Attorney's Office."), at 10 ("[A]any documents that the U.S. Attorney's Office might have regarding [Request B] are documents that it would have received from the FBI.")]. The fact that the documents may have originated with the FBI is irrelevant. The FOIA does not exempt from disclosure records that were originated elsewhere. See, e.g., Matter of Wade, 969 F.2d 241, 248 (7th Cir. 1992) ("The United States Attorney is obligated to produce nonexempted documents pursuant to the Act. The agency cannot avoid the request or withhold the documents by referring them back to the agency where they originated."); Keys v. Dep't of Homeland Sec., 570 F.Supp.2d 59, 66-67 (D.D.C. 2008) ("[An Agency] cannot simply refuse to act on the ground that the documents originated elsewhere.") (quoting McGehee v. C.I.A., 697 F.2d 1095, 1110 (D.C.Cir.1983)). This is implicit in the DOJ's regulations, which provide that when a DOJ component locates a responsive record that originated with a different component, it can refer the record to the originating component, which then decides if the record is exempt from disclosure. 28 C.F.R. § 16.4(d)(2). This referral process recognizes that the non-originating component still has an obligation to search for and locate responsive documents, but that the originating component may be better suited to make disclosure determinations.

Moreover, the USAO has not established that a search would be unduly burdensome. "If the reasonableness of a search is questioned, the burden is on the agency to 'provide sufficient explanation why a search . . . would be unreasonably burdensome.'" People for Am. Way Found. v. U.S. Dep't of Justice, 451 F.Supp.2d 6, 12 (D.D.C. 2006) (internal quotations omitted). A

"sufficient explanation" is "a detailed explanation by an agency regarding the time and expense of a proposed search in order to assess its reasonableness." <u>Wolf v. C.I.A.</u>, 569 F.Supp.2d 1, 9 (D.D.C. 2008). The Farmer Declaration does not sufficiently explain the burden that a search would impose on the USAO. It does not describe the potential time, expense, or scope associated with the allegedly burdensome search. The USAO cannot avoid a search simply because the documents are hard copy and may be located in different locations.

Accordingly, the USAO is directed to conduct a reasonable search to locate records responsive to Requests A and B, and to produce responsive, nonexempt records.

## IV.   Conclusion

For the foregoing reasons, the Court finds that the FBI has performed a reasonable, adequate search for records responsive to Requests A and B. Further, with the exception of Exemption 7(E), the FBI has properly invoked FOIA's exemptions. The FBI should promptly produce the materials improperly withheld under Exemption 7(E), after which it will have completely fulfilled its obligations to respond to Requests A and B. In addition, the Court finds that the ACLUM is entitled to summary judgment as to the USAO, and the USAO is directed to conduct a reasonable search to locate records responsive to Requests A and B.

**So Ordered.**

Dated: August 17, 2016

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE