# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION and CARMEN ORTIZ, UNITED STATES ATTORNEY FOR THE DISTRICT OF MASSACHUSETTS,<br><br>    Defendants. | Civil Action No. 14-11759-ADB |

## DEFENDANT FBI'S MOTION FOR RECONSIDERATION

Defendant, the Federal Bureau of Investigation ("FBI"), files this motion for reconsideration of the Court's August 17, 2016 Memorandum and Order in this Freedom of Information Act ("FOIA") case. Specifically, the FBI seeks reconsideration of the Court's Order as to 12 pages of documents that the FBI released to Plaintiff, the ACLU of Massachusetts ("ACLUM"). Reconsideration is warranted here because the FBI withheld information from these 12 pages, pursuant to FOIA Exemption 7(E), to protect the current capabilities of the Massachusetts Joint Terrorism Task Force ("JTTF") to pursue terrorism investigations. See 5 U.S.C. § 552(b)(7)(E). Specifically, the information withheld is akin to a database or a list of granular data allowing terrorists and other criminals to ascertain how the FBI, in Massachusetts and elsewhere, goes about investigating crimes. This, in turn, affects the ability of the JTTF to pursue individual investigations and could reasonably be expected to risk circumvention of the

law. This information is protected under the FOIA, and the FBI should not be required to disclose it.

## Procedural History

By letter dated December 9, 2013, the ACLUM submitted a FOIA request to the FBI seeking access to records related to the structure of the JTTF ("Request A"), records concerning FBI Boston Field Office Investigations ("Request B"), and records pertaining to Ibragim Todashev ("Request C"). See Doc. 53, First Declaration of David M. Hardy ("First Hardy Decl."). By agreement, the parties' motions for summary judgment dealt with Requests A and B only, as did the Memorandum and Order about which the FBI now seeks reconsideration. In response to Requests A and B, the FBI processed a total of 1,849 responsive pages. Doc. 53, First Hardy Decl., at ¶ 4. Of these pages, 903 pages were released in full, 162 pages released in part, and 784 pages were withheld in full. Id. at ¶ 4.

On August 17, 2016, this Court issued a Memorandum and Order on the parties' motions and cross-motions for summary judgment. Doc. 77. The Court held that, with one exception, the FBI had met its obligations under the FOIA as to Requests A and B. The Court found, however, that the FBI had not satisfied its burden of demonstrating that Exemption 7(E) applies to staffing and budget information about the JTTF. Doc. 77 at 9. As a result, the Court ordered the FBI to release the information it withheld under Exemption 7(E).

In response to the Court's Order, the FBI made a supplemental release of 12 pages containing certain staffing and budget information previously withheld. *See* Second Declaration of David M. Hardy ("Second Hardy Decl.") at ¶ 4. The FBI, however, seeks to continue to withhold specific information that it contends is protected by Exemption 7(E); it submits this

Motion for Reconsideration for information withheld on pages MASS JTTF-712, 720, 723, 725-727, and 729-734.

**<u>Legal Argument</u>**

Under FOIA Exemption 7(E), information from agency records may be withheld if disclosure would reveal "(1) techniques and procedures for law enforcement investigations or prosecutions or (2) guidelines for law enforcement investigations or prosecutions that could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

In moving for reconsideration, the FBI seeks to protect the current capabilities of the Massachusetts JTTF to pursue terrorism investigations. The information withheld reveals non-public details about law enforcement techniques, such as the JTTF's covert activities, its physical and electronic surveillance capabilities, and the FBI's strategy for deploying its limited counterterrorism resources. Second Hardy Decl., ¶ 5. Terrorist organizations and other criminal groups have the ability to gather information from myriad sources, analyze it, and deduce means and methods from disparate details to defeat the investigative efforts of law enforcement. <u>Id.</u> Adversaries can, and do, look across the programs of law enforcement to pinpoint vulnerabilities, assess opportunities to avoid detection by law enforcement, and identify law enforcement targets for terrorist attacks. <u>Id.</u> Thus, information that discloses current capabilities of a particular JTTF, though seemingly innocuous, could have significant adverse effects when juxtaposed with other publicly-available data. <u>Id.</u> This does not just affect the Massachusetts JTTF, but all other JTTFs as well. The information, in its aggregate, is analogous to a database or a list of granular data allowing terrorists and other criminals to ascertain how the FBI, in Massachusetts and elsewhere, investigates crimes. <u>Id.</u> This, in turn, affects the ability and effectiveness of the JTTF

to conduct individual investigations, and could reasonably be expected to risk circumvention of the law. Id.

Under this guiding rationale, the FBI has re-reviewed the redactions at issue and released additional information, but it has withheld other documents that it seeks to protect. The FBI moves for reconsideration to withhold this specific information because it would disclose techniques and procedures for law enforcement investigations, including techniques such as covert activities and strategic allocation of counterterrorism resources. Second Hardy Decl. at ¶ 7. This information includes the following about the JTTF:

- the number of personnel supplied by the FBI, other federal agencies, and local law enforcement to the JTTF;
- a detailed numerical breakdown, by job title, of the FBI employees in the JTTF;
- budget item numbers;
- certain sensitive budget amounts;
- three potential overt parking locations;
- monthly parking rates for covert vehicles;
- the number of covert vehicles;
- the lease ID numbers of covert vehicles;
- the monthly price of covert high speed internet access; and
- other sensitive information about phones and internet lines.[1]

---

[1] In response to the Court's Order, the FBI released information amount of overtime pay budgeted for individual officers; the description of budgetary items as either overt or covert; the number and general locations of JTTF annexes; the numbers of, and amounts budgeted for, phones, secure video teleconference, GPS devices, cameras, and other equipment; the make and model information of some phones, cameras, and GPS devices; and prices quoted for individual parking spaces. Second Hardy Decl. at ¶ 6.

4

Second Hardy Decl. at ¶ 7.

The above information must be protected because its disclosure would reveal techniques and procedures for FBI investigations, such as covert activities, physical and electronic surveillance capabilities, and the strategy of deploying the FBI's limited counterterrorism resources, and thereby allow circumvention of the law. The circumvention of the law could be accomplished by one or both of the following inter-related means: (1) circumvention by avoiding JTTF capabilities, or (2) circumvention by sabotage, monitoring, or attack. Second Hardy Decl. at ¶ 8.

First, the FBI must continue to protect information that is connected to current staffing and budget capabilities. Id. at ¶ 9. The FBI must strategically allocate its limited resources to the locales and investigative activities its sees as most useful and efficient, and providing the most successful results in support of its law enforcement and intelligence gathering missions. The strategy of allocating these resources constitutes part of the techniques and procedures that the FBI, specifically the Massachusetts JTTF, uses to investigate terrorism. There is a direct correlation between the FBI's ability to detect and deter various types of crime and the specific allocation of resources in any particular location. Therefore, it is vital that the FBI protect the techniques and procedures of strategically distributing its personnel and other resources. The targets of JTTF investigations are being investigated for terrorism, and are often part of highly sophisticated organizations that perform data analysis. The data at issue is dated from fiscal year 2010 through 2014, but it tends to reflect the current staffing and budgetary reality of the Massachusetts JTTF. A hostile analyst could utilize the protected information to discern the limitations and vulnerabilities of this JTTF and, ultimately, other JTTFs, thereby harming the ability of the FBI to pursue individual investigations. Id.

For example, if a terrorist has knowledge that location A has more resources (personnel or otherwise) to track the type of terrorist activity they are engaged in, that terrorist is highly likely to seek out a different location with less ability to detect that criminal activity or to develop specifically targeted countermeasures to thwart the FBI's allocated resources. Id. at ¶ 10. As a result, the terrorism schemes could potentially go undetected for a longer period of time and have a much higher potential for success. Thus, the disclosure of the information could assist those seeking to evade future terrorism investigations.

The use of covert vehicles is another law enforcement technique that falls under FOIA Exemption 7(E). Id. Disclosing nonpublic information such as the monthly prices of parking spaces for covert vehicles would provide a critical data point for any analysis to determine the parking garage(s) used covertly by the JTTF, thus potentially compromising the license plate numbers of the covert vehicles and allowing terrorists to avoid them, as well as exposing them to the other means of circumvention below, such as sabotage, monitoring, or attack. Similarly, if the FBI disclosed protected internal budget amounts, terrorists could analyze them to identify the source of covert internet access and circumvent that technique by means of spyware or other cyber-attacks. Each redacted piece of information is a piece of valuable data, despite appearing benign at first blush. Id.

Once terrorists have been empowered with this data, the JTTF's ability to investigate these crimes will be diminished, at best. Id. at ¶ 11. Revealing this information in conjunction with current publicly available information on the overall FBI budget, the total budgeted amount of operating expenses, specific covert and overt operating expenses, and the breakdown of the operational personnel staffing the Massachusetts JTTF, would disclose and define the focus of the JTTF. Revealing the level of focus the FBI is applying via its allocation of resources and

other specific sensitive data about the capabilities of the JTTF to thwart specific areas of crime would provide terrorists with insight as to where the FBI is focusing its limited resources and where terrorists are most likely to be detected. Terrorists could then plan and structure their activities to avoid the FBI's investigative strengths, exploit its weaknesses, and circumvent the law. Id.

Second, the investigative capability of a JTTF is limited by its resources; therefore, disclosing information about the techniques and procedures of advantageously distributing those resources could lead to circumvention of the law. Id. at ¶ 12. If the protected information were disclosed, the JTTF's resources could be debilitated by sabotage, avoided by monitoring, or decimated by attack. For example, some of the information would reveal commercial parking locations used "overtly" by the JTTF. Id. Although these are "overt" budget items, they are not commonly known to the public. Id. The term "overt" in this context does not mean that each car has "Boston JTTF" displayed on it, nor does it mean that there is any public indication that the vehicles are JTTF vehicles. Id. While all law enforcement vehicles may be somewhat susceptible to vandalism, monitoring, sabotage, or attack, the susceptibility is lower when those vehicles are parked in a secure law enforcement area or outside a highly policed area such as a police station. In contrast, the susceptibility is much higher for JTTF vehicles that are parked in a commercial parking garage, where access is available to the general public, and security is not provided by armed law enforcement. Id.

As another example, covert activities are a technique used by the FBI, and the protected information relative to the FBI's covert activities is non-public information about the FBI's use of that technique. Specifically, the FBI withheld the overall amount of resources devoted to such covert activities in the Massachusetts JTTF, as well as budgetary information about covert

internet services. Given the ability of hackers to exploit this type of information, terrorists could potentially use the total amount budgeted each year to fund covert activities, specifically internet operations, to identify the providers of covert internet access. Id. They could then circumvent the law not only by adjusting their practices to avoid detection, but by disrupting the internet service, or penetrating the FBI's network and destroying the FBI's ability to use that service. Id.

The information that the FBI continues to withhold in 12 pages documents would disclose techniques and procedures for law enforcement investigations. Id. at ¶ 13. Disclosure of this information would allow criminals to circumvent the law by avoiding JTTF capabilities, sabotaging equipment, monitoring JTTF vehicles and other resources, or targeting JTTF personnel and other resources for attack. Id. Therefore, it was properly withheld pursuant Exemption 7(E), and the FBI respectfully requests that the Court find that this withholding is proper under the FOIA.

## **CONCLUSION**

For all of these reasons, the FBI respectfully requests that the Court grant its motion for reconsideration and enter judgment for the FBI as to its assertion of FOIA Exemption 7(E).

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: */s/ Jennifer A. Serafyn*
Jennifer A. Serafyn, BBO# 653739
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3188
Dated: December 22, 2016   Jennifer.Serafyn@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

                                            */s/ Jennifer A. Serafyn*
                                            Jennifer Serafyn
Dated: December 22, 2016                Assistant United States Attorney