IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS,<br><br>    *Plaintiff*,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION; and CARMEN ORTIZ, UNITED STATES ATTORNEY FOR THE DISTRICT OF MASSACHUSETTS,<br><br>    *Defendants*. | Civil Action No. 14-cv-11759-ADB |

## ACLUM'S OPPOSITION TO FBI'S MOTION TO RECONSIDER

On August 17, 2016, this Court ordered the FBI to produce budget and staffing information that had been improperly withheld under Freedom of Information Act Exemption (b)(7)(E) (Exemption 7(E)). The FBI now asks the Court to reconsider this order. It should not.

"[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason [be] permitted, to battle for it again." *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (internal citation omitted). The FBI moves for reconsideration under Federal Rule of Civil Procedure 59(e). Dkt. No. 83 (FBI Mtn) at 1. But this rule sets a strict 28-day jurisdictional time limit that has long since passed. *See In re Vazquez Laboy*, 647 F.3d 367, 372 (1st Cir. 2011). Regardless, even if the Court were to construe the FBI's motion as requesting reconsideration under its authority to modify an interlocutory

1

judgment,[1] the motion still fails. "[A] court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates 1) an intervening change in the law, 2) the discovery of new evidence not previously available or 3) a clear error of law in the first order." *Antony v. Duty Free of Americas, Inc.* 705 F. Supp. 2d 112, 114 (D. Mass. 2010).

The FBI does not satisfy this standard. Rather than point to any new law or facts, it "rehashes the same arguments [it] made in prior filings and at oral argument." *Id.* The FBI simply uses scarier words to reassert that the withheld information could somehow enable criminals to determine its specific investigative priorities and adjust their plans. The Court already rejected this argument, and the FBI does not demonstrate any of the "extraordinary circumstances" required to justify reconsideration. *See id.* (internal quotation marks omitted).

## BACKGROUND

### I. Procedural History

On December 9, 2013, the American Civil Liberties Union Foundation of Massachusetts (ACLUM) filed a Freedom of Information Act (FOIA) request seeking (1) the number and type of investigations carried out by the Boston FBI Field office and (2) the structure and function of the Massachusetts Joint Terrorism Task Force (JTTF).[2] Dkt. No. 1 (Compl.) at 3. In response, the FBI withheld 784 pages, released 903 pages in full, and released 162 pages in part. Dkt. No. 52 (FBI SJM) at 4. It then sought summary judgment on July 24, 2015, arguing that various FOIA provisions exempted the withheld information. *Id.* at 7-19. ACLUM's cross motion for summary judgment did not challenge most of these claimed exemptions. Dkt. No. 61 (ACLUM SJM) at 1.

---

[1] Federal Rule of Civil Procedure 54(b), which states that "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims," is often referenced as the source of this authority. *See, e.g.*, *Homeowner Options for Massachusetts Elders Inc. v. Brookline Bancorp, Inc.*, 789 F. Supp. 2d 242, 243 (D. Mass. 2011).
[2] A third part of the request, regarding Ibragim Todashev, will be addressed at a later date.

Instead, the dispute focused on the FBI's reliance on Exemption 7(E)—which protects techniques, procedures or guidelines for law enforcement investigations whose disclosure could reasonably be expected to risk circumvention of the law—to withhold staffing and budget information about the Massachusetts JTTF.[3] 5 U.S.C. § 552(b)(7)(E); FBI SJM at 18-19; ACLUM SJM at 1-20; Dkt. No. 68 (FBI Opp.) at 2-14; Dkt. No. 72 (ACLUM Reply) at 2-14.

To support its use of Exemption 7(E), the FBI filed a declaration of Section Chief David M. Hardy, Dkt. No. 53 (First Hardy Decl.). Citing this declaration, it argued the withheld information could give "an idea as to where the FBI is focusing its limited resources," revealing JTTF investigative priorities, and enabling "criminals" to "avoid the FBI's investigative strengths, exploit its weaknesses, and circumvent the law." FBI SJM at 19; FBI Opp. at 3, 10-11. The FBI also asserted criminals could combine the withheld information with other data to obtain "a region by region breakdown of FBI resources and priorities that could suggest . . . which region they should operate in." FBI Opp. at 14.

In response, ACLUM argued the requested staffing and budget information neither met the narrow statutory definitions of "technique, procedure or guideline," nor posed an increased risk of circumvention of the law. ACLUM SJM at 1-20, ACLUM Reply at 2-14. It emphasized, "the only 'procedure' this [information] would disclose is that the FBI generally expends resources to fight crime; the only 'circumvention' it would risk is that a would-be criminal could avoid apprehension by following the law." ACLUM SJM at 2. It also challenged the hypothesis that individuals could combine the withheld information with other data to plan crimes, noting that if this theory justified withholding the generalized information at issue, it "'would eviscerate

---

[3] The FBI also initially relied on Exemption 7(E) to withhold composition data and case statistics. The FBI released the former, and its motion to reconsider does not address the latter.

the principles of openness in government that the FOIA embodies.'" ACLUM Reply at 14 (quoting *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 76 (D.D.C. 2006)).

On August 17, 2016, this Court held that the FBI failed to make "the threshold showing that the withheld information, none more recent than 2014, would disclose 'techniques and procedures' for law enforcement investigations or prosecutions." Dkt. No. 77 (Order) at 9. The Court explained, "the historic, generic staffing and budget information withheld by the FBI, such as the number of parking spots allocated to the Massachusetts JTTF or the maximum overtime pay, does not disclose how the Massachusetts JTTF actually goes about investigating crimes." *Id*. It therefore ordered the FBI to "promptly produce the materials improperly withheld under Exemption 7(E)." *Id.* at 17. Four months later, the FBI moved for reconsideration with respect to the remaining material withheld under Exemption 7(E). FBI Mtn at 1-2.[4] In support, it filed a memorandum of law and a second declaration from Section Chief Hardy. Dkt. No. 84 (FBI Memo); Dkt. No. 87 (Second Hardy Decl.).

## II.     Remaining Outstanding Documents

Contrary to this Court's order, the FBI continues to withhold the following staffing and budget information from 13 pages:[5]

**Staffing**

- The number of FBI, federal, and state and local, officers participating in the Massachusetts JTTF in Fiscal Years 2012-2014. Rossman Decl. Ex. 3 (JTTF 720); Ex. 5 (JTTF 725-26); Ex. 6 (JTTF 729-30).

- The authorized monthly and annual overtime reimbursement for each officer from the Massachusetts JTTF to state and local departments in Fiscal Years 2010-2011. Rossman Decl. Ex. 1 (JTTF 712); Ex. 2 (JTTF 717).

---

[4] The FBI produced some of the previously withheld material on October 17, 2016 and December 14, 2016. Dkt. No. 85 (Mtn to Extend) at 2.

[5] The FBI is also withholding covert vehicle lease ID numbers, FBI Memo at 4, which ACLUM does not challenge.

- The number of state and local officers entitled to receive overtime, and the total and per officer amount of overtime money requested from the Massachusetts JTTF in Fiscal Years 2012-2013. Rossman Decl. Ex. 5 (JTTF 727); Ex. 6 (JTTF 733).

- The average monthly charge for overtime and the requested overtime enhancement in Fiscal Year 2012. Rossman Decl. Ex. 7 (JTTF 734).

**Budget**

- The budget for internet service in Fiscal Year 2010. Rossman Decl. Ex. 1 (JTTF 712); Second Hardy Decl. at 4 n.2.

- Requested budget enhancements for parking in Fiscal Year 2011. Rossman Decl. Ex. 4 (JTTF 723).

- The number of covert leased vehicles, the number of covert parking spaces, and the total monthly and annual rent for covert parking spaces in Fiscal Years 2012-2013. Rossman Decl. Ex. 5 (JTTF 725); Ex. 6 (JTTF 729).

- The number of covert parking spaces, and the total monthly and annual rent for overt parking spaces in Fiscal Years 2012-2013. Rossman Decl. Ex. 5 (JTTF 726); Ex. 6 (JTTF 731-32).

- The number of covert high speed internet lines and the total monthly and annual charge for these lines in Fiscal Years 2012-2013. Rossman Decl. Ex. 5 (JTTF 726); Ex. 6 (JTTF 730-31).

- Requested funds for toll expenses in Fiscal Year 2013. Rossman Decl. Ex. 6 (JTTF 730).

- The total covert budget proposal in Fiscal Years 2011-2013. Rossman Decl. Ex. 4 (JTTF 723); Ex. 5 (JTTF 726); Ex. 6 (JTTF 731).

- The total covert budget proposal in Fiscal Years 2012-2013. Rossman Decl. Ex. 5 (JTTF 727); Ex. 6 (JTTF 733).

**ARGUMENT**

The "fundamental purpose of the FOIA is to assist citizens in discovering what their government is up to." *Long*, 450 F. Supp. 2d at 52-53 (internal quotation marks omitted). Providing public access to aggregate data such as the withheld staffing and budget information "open[s] agency action to the light of public scrutiny," *Dep't of the Air Force v.* Rose, 425 U.S. 352, 361 (1976), without creating a risk of circumvention of the law. This information is not, as

5

the FBI suggests, a "database or a list of granular data," FBI Memo at 1, 3 nor does it reveal "the JTTF's covert activities, its physical and electronic surveillance capabilities, and the FBI's strategy for deploying its limited counterterrorism resources," *Id.* at 3, 5. The Court already held that the FBI must disclose this information under FOIA, Order at 9-11, and there is no reason to reverse this decision.

I.  **A motion to reconsider is appropriate only in extraordinary circumstances.**

"The Supreme Court [] has admonished that 'courts should be loathe'" to grant a motion to reconsider an interlocutory order "'in the absence of extraordinary circumstances.'" *Antony*, 705 F. Supp. 2d at 114 (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)). This "extraordinary remedy'" should "be used sparingly," and only where the movant demonstrates (1) an intervening change in the law, (2) newly discovered evidence that was not previously available, or (3) a clear error of law. *Spencer v. Roche*, 755 F. Supp. 2d 250, 258-59 (D. Mass. 2010); *see also Davis v. Lehane,* 89 F. Supp. 2d 142, 147 (D. Mass. 2000). "Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revising a party's case and rearguing theories previously advanced and rejected." *Spencer*, 755 F. Supp. 2d at 259 (internal quotation marks omitted).

Courts frequently reject government motions to reconsider FOIA orders that fail to satisfy this standard. *See, e.g., Dayton Newspapers Inc. v. Dep't of Air Force*, 107 F.Sup.2d 912, 919-20 (S.D. Ohio 1999); *Memphis Publishing Co. v. Federal Bureau of Investigation*, -- F. Supp. 2d -- , No. 10-1878, 2012 WL 12906085, *1-2 (D.D.C. April 4, 2012); *Cuban v. Securities and Exchange Comm.*, 795 F.Supp.2d 43, 52-63 (D.D.C. 2011). This Court should do the same.

## II. There are no extraordinary circumstances here.

The FBI "has not even attempted to predicate its motion for reconsideration" on any of the requisite factors. *Davis*, 89 F. Supp. 2d at 147. Its motion does not argue an intervening change in the law or a clear error of law. In fact, the motion does not cite a single case. Nor does it identify any newly discovered evidence that was previously unavailable. Instead, via the new Hardy Declaration, the FBI has simply offered a more verbose version of the original Hardy Declaration. This is not a plausible basis to grant reconsideration. *Cf. Dhiab v. Obama,* 141 F. Supp. 3d 23, 28 (D.D.C. 2015) (refusing to reconsider because "while the Government added a great deal more verbiage to the later declarations, its message remains the same.").[6]

In fact, the only arguably new piece of information in the second Hardy Declaration is the assertion that "the data at issue is dated from fiscal year 2010 through 2014, but it tends to reflect the current staffing and budgetary reality of the Massachusetts JTTF." Second Hardy Decl. at 6; *see also id.* at 4 (same). This assertion cannot warrant reconsideration for three reasons.

---

[6] *Compare* First Hardy Decl. at 22 ("This JTTF has been assembled to pursue specific investigative goals, revealing this type of information would reveal the very scope of the structure, methods, techniques, and/or capabilities of this JTTF. Providing criminals with the level of focus the FBI is applying to these types of the structure [sic], techniques, methods and capabilities would provide criminals with an idea as to where the FBI is focusing its limited resources. Criminals could then plan and structure their activities to [] avoid the FBI's investigative strengths, exploit its weaknesses and circumvent the law.") *with* Second Hardy Decl. at 5-6 ("The strategy of allocating these resources constitutes part of the techniques and procedures that the FBI, specifically the Massachusetts JTTF, uses to investigate terrorism. There is a direct correlation between the FBI's ability to detect and deter various types of crime and the specific allocation of resources in any particular location.") *and id.* at 7 ("The investigative capability of a JTTF is limited by its resources; therefore disclosing information about the techniques and procedures of advantageously distributing those resources could lead to circumvention of the law. If the protected information are disclosed, the JTTF's resources could be debilitated by sabotage, avoided by monitoring, or decimated by attack.").

First, the phrase "tends to reflect the current [] reality" does not convey anything of real substance. Particularly in light of the FBI's own admission that "the budget and staffing of the Massachusetts JTTF varies from year to year," Second Hardy Decl. at 4, this "does not provide much insight" into the relationship between current resources and historical data, *Cuban,* 795 F. Supp. 2d at 53.

Second, to the extent Hardy's new affidavit adds something, the FBI "offers no explanation as to why it did not present" this information earlier. *Davis*, 89 F. Supp. 2d at 148; *see also Antony*, 705 F. Supp. 2d at 114 (refusing reconsideration where plaintiff's new arguments "could and should have been presented to the Court prior to its ruling").

Finally, this statement does not alter the conclusion that the FBI has failed to show that the withheld information constitutes a technique or procedure. Order at 9-10. Noting "'the terms techniques and procedures refer to specific methods of law enforcement, not policy or budgetary choices about the assignment of personnel,'" the Court previously explained the withheld information "does not disclose how the Massachusetts JTTF actually goes about investigating crimes." *Id.* at 9 (quoting *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Security*, 626 F.3d 678, 682 (2d Cir. 2010). Hardy's new, mostly recycled declaration does not alter this conclusion. *See Cuban*, 795 F. Supp. 2d at 59.

The FBI's remaining arguments are also unavailing. The withheld information is not broken down by crime or geography. Consequently, the FBI has not supported its concerns about providing "a terrorist" with "knowledge that location A has more resources (personnel or otherwise) to track the type of terrorist activity they are engaged in," FBI Memo at 6. Nor has it supported its claim that complying with this Court's order would reveal "specific sensitive data about the capabilities of the JTTF to thwart specific areas of crime." *Id.* at 7.

The FBI's other hypotheses are no more compelling. The FBI suggests "terrorists" could somehow use monthly prices for covert and overt parking spaces to "sabotage, monitor[], or attack" the vehicles themselves. *Id.* at 6. For starters, the notion that "overt" FBI infrastructure should be exempt from FOIA is without merit. As for covert vehicles, the FBI never says how years-old parking rates could identify specific parking garages in use today, let alone specific parking spaces or vehicles in those garages. The same is true of the FBI's unsupported assertion that knowing the cost of internet service in 2012 and 2013 could enable "terrorists" to identify the current "source of covert internet access and circumvent that technique by means of spyware or other cyber-attacks." *Id.* at 6. These arguments are "much too speculative" to support reconsideration. *Dayton Newspapers*, 107 F. Supp. 2d at 919; *see also Long*, 450 F. Supp. 2d at 75 ("unreasonable speculation and hypothetical combinations" cannot justify FOIA exemptions).

All that remains of the FBI's motion are repackaged versions of arguments already made and rejected. For instance, the FBI previously asserted that it "must strategically allocate to those investigative efforts it sees as a priority," and thus the withheld information "could reveal the priority of the JTTF." FBI Opp. at 10. Its motion to reconsider paraphrases this argument, stating "the FBI must strategically allocate its limited resources to the locales and investigative activities it[] sees as must useful and efficient," and thus the withheld information "would disclose and define the focus of the JTTF." FBI Memo at 5, 6. Similarly, the FBI's earlier caution against the dangers of "cumulative information," FBI Opp. at 14, is reflected in its most recent assertion that "terrorist organizations and other criminal groups have the ability to gather information from myriad sources, analyze it, and deduce means and methods from disparate details," FBI Memo at 3. Finally, the FBI's previous warning that "criminals" could use the withheld information to "avoid the FBI's investigative strengths, exploit its weaknesses and circumvent the law," FBI

9

SJM at 19, reverberates in its current suggestion that following this Court's order "would allow criminals to circumvent the law by avoiding JTTF capabilities." FBI Memo at 8.

In short, the FBI's motion for reconsideration "simply rehashes the arguments" of its summary judgment submission. *Davis*, 89 F. Supp. 2d at 147-48. The Court did not previously overlook these arguments; it rejected them. *Associated Press*, 395 F. Supp. 2d at 19; *see* Order at 9-11. It should do so again. *See Davis* (repeated arguments are "not enough to merit reconsideration"); *Associated Press*, 395 F. Supp. 2d at 19-20 (denying motion to reconsider rejection of FOIA exemptions where the government merely repeats its argument).

## CONCLUSION

For the foregoing reasons, this Court should deny the FBI's motion for reconsideration.

Respectfully submitted,

*/s/ Jessie J. Rossman*_____
Jessie J. Rossman (BBO No. 670685)
Matthew R. Segal (BBO No. 654489)
Laura Rótolo (BBO No. 665247)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS
211 Congress Street
Boston, MA 02110
(617) 482-3170
jrossman@aclum.org
msegal@aclum.org
lrotolo@aclum.org


William D. Dalsen (BBO No. 689334)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
(617) 526-9600
wdalsen@proskauer.com

DATED: January 20, 2017

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

I hereby certify that counsel for Plaintiff has conferred with counsel for Defendants concerning this motion.

                                                */s/ Jessie J. Rossman*
                                                Jessie J. Rossman (BBO No. 670685)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed via the Court's CM/ECF system and that and a copy will be sent automatically to all counsel of record on January 20, 2017.

                                                */s/ Jessie J. Rossman*
                                                Jessie J. Rossman (BBO No. 670685)